IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

RODRIGUEZ GROCERY & DELI,

    Plaintiff,

v.                         CIVIL NO.: WDQ-10-1794

UNITED STATES OF AMERICA,
DEPARTMENT OF AGRICULTURE
FOOD AND NUTRITION SERVICE,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Rodriguez Grocery & Deli ("the Grocery") appealed the United States Department of Agriculture's ("USDA's") decision permanently disqualifying it from participation in the Supplemental Nutrition Assistance Program ("SNAP"). For the following reasons, the USDA's motion for summary judgment will be denied without prejudice to permit the plaintiff to conduct discovery.

I.   Background[1]

Rodriguez Grocery & Deli is a Baltimore, Maryland convenience store. Shi Lin Aff. ¶ 5. It is owned by Shi Lin, who operates it with his wife and two employees. *Id.* ¶ 4. The

---

[1] On summary judgment, the Grocery's evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 22, 255 (1986).

Grocery became a SNAP authorized retailer in July 2006, allowing its customers to pay for food with SNAP benefits. Admin. Rec. 5.

In 2009, the USDA's Food and Nutrition Service ("FNS") began investigating the Grocery for trafficking SNAP benefits[2] when its monitoring software detected unusual electronic benefit transfer card ("EBT") transactions. *Id.* 42. On May 20, 2009, FNS personnel Terry Claypoole visited the Grocery "to look at the current stock . . . before proceeding with the EBT paper case." *Id.* 6-7, 154. During his visit, Claypoole inventoried SNAP eligible products and noted that the Grocery had no shopping carts or baskets, one point of sale device for accepting EBT cards, and no optical price scanners. *Id.* 6-8. On July 25, 2009, Claypoole visited the Hispano American Grocery, a comparable SNAP authorized store, located .284 miles from the Grocery. *Id.* 75. He determined that it also had no shopping carts or baskets and carried a similar, but larger, inventory of SNAP eligible products. *Id.* 75-77.[3]

FNS continued to monitor the Grocery, and determined that between July and September 2009: (1) 383 transactions ended in

---

[2] Trafficking is "the buying or selling of [food stamp] coupons . . . or other benefit instruments for cash or consideration other than eligible foods." 7 C.F.R. § 271.2.

[3] Both stores are "Spanish-American grocery store[s]." Admin. Rec. 156.

"a same cents value,"[4] (2) 32 transactions were "made too rapidly to be credible,"[5] (3) 154 transactions were multiple transactions "made from individual benefit accounts" within 24 hours, and (4) 343 transactions were "excessively large."[6] *Id.* 42, 45-72. FNS also determined that between July and September 2009, the Grocery redeemed $48,535 in benefits from 1,632 transactions, while the Hispano American Grocery redeemed $7,585 in benefits from 989 transactions. *Id.* 120.

On November 2, 2009, David Haines, an FNS officer at the Mid-Atlantic Compliance Operations Center ("Compliance Center"), issued Lin a charge letter explaining that the agency had evidence the Grocery was violating SNAP by trafficking benefits, and was considering permanently disqualifying it from the program. *Id.* 42-44. The letter explained that the Grocery could submit evidence to dispute the charge and that FNS could "impose a civil money penalty (CMP) . . . in lieu of permanent

---

[4] FNS noted 242 transactions ending in ".00," 34 ending in ".25," and 107 ending in ".50." *Id.* 49-53.

[5] These back-to-back transactions occurred within 26 seconds to five minutes and 35 seconds of one another. *Id.* 55-57.

[6] These transactions were valued between $39.00 and $599.98. *Id.* 66-72.

disqualification" if the Grocery provided documentation showing that it met certain regulatory requirements. *Id.* 43.[7]

Through counsel, Lin responded to the charge letter on December 14, 2009. *Id.* 142. He denied that "he ha[d] engaged, or permitted others to engage, in trafficking" and provided a partial store inventory of items ending in ".00," ".25," and ".50." *Id.* 142-46. He explained that the back-to-back transactions occurred because the Grocery is "very small" and the "average sale transaction is very, very brief in duration" and the "excessively large" transactions reflected families that did their weekly grocery shopping at the Grocery. *Id.* Lin also provided Maryland Sales and Use Tax Returns for July through September 2009 to show that "[o]n no occasion did the EBT transactions exceed the [Grocery's] reported sales." *Id.*

On January 14, 2010, the Compliance Center determined based on the "store visit, analysis of electronic data and clients' data, and information and documentation provided by the retailer" that "violations of [SNAP] occurred." *Id.* 198-200. On January 20, 2010, Haines sent Lin a letter explaining that because the Compliance Center had found that the Grocery

---

[7] On January 5, 2010, FNS issued a revised charge letter because some of the transactions listed in the November 2, 2009 letter had been "incorrectly listed with Greenwich Mean Time instead of the local time." *Id.* 158.

4

trafficked SNAP benefits, it was "permanently disqualified" from the program. *Id.* 201.

On February 1, 2010, Lin appealed the Compliance Center's decision to FNS's Administrative Review Branch ("ARB"). *Id.* 205. On May 7, 2010, Lin submitted a letter and "supplemental materials" in support of his appeal. *Id.* 211-493.[8] On June 2, 2010, the ARB issued the agency's final decision, finding sufficient evidence of trafficking to permanently disqualify the Grocery. *Id.* 497-512. The ARB found:

> that Rodriquez Grocery & Deli likely trafficked in SNAP benefits [i]s evidenced by: the suspicious patterns in EBT transaction data; the inadequacy of the store's stock and facility to support such transactions as observed during a store visit; the lack of adequate explanations for customer spending habits; and [the presence of] other, larger SNAP-authorized stores . . . within close proximity to [the Grocery], which likely offer a greater selection of eligible food items at lower prices, and at which customers would be more likely to make large staple food purchases.

*Id.* 511

On July 2, 2010, the Grocery sued the USDA in this Court seeking review of its permanent disqualification. ECF No. 1. On October 7, 2010, the USDA moved for summary judgment. ECF No. 11.

---

[8] These included pictures of the Grocery, a partial inventory list, daily sales and expenses reports, Maryland Sales and Use Tax Returns, and receipts for the Grocery's inventory purchases. *Id.* 220-492.

II. Analysis

   A.   Standards of Review

      1.   Summary Judgment

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

2. Review of the Agency Decision

Under 7 U.S.C. § 2023(a)(13), a SNAP authorized store may obtain judicial review of its disqualification by filing suit in federal district court within 30 days after delivery of the final determination notice. The district court suit "shall be a trial *de novo* . . . in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15).

Thus, "[t]he scope of review in an action brought pursuant to 7 U.S.C. § 2023(a)(13) is significantly beyond the scope of review available under the general provisions of the Administrative Procedure Act." *Bon Supermarket & Deli v. United States*, 87 F. Supp. 2d 593, 598-99 (E.D. Va. 2000) (internal quotation marks and citations omitted). The plaintiff bears the burden of "establishing the invalidity of the agency action by a preponderance of the evidence," *id.* at 599, and must show "at the outset that the [agency] determined incorrectly that [he] engaged in trafficking," *Hajifarah v. United States*, --- F. Supp. 2d ---, 2011 WL 1575308, at *13 (D. Me. Apr. 27, 2011). To carry this burden, the plaintiff "may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency." *Redmond v. United States*, 507 F.2d 1007, 1012 (5th Cir. 1975).

B.  The USDA's Motion

Under the Food Stamp Act of 1977, the USDA operates SNAP to provide eligible households with benefits to purchase food items at authorized stores. 7 U.S.C. §§ 2011 et seq. The SNAP regulations prohibit authorized stores from "trafficking" benefits by accepting them as payment for ineligible goods, such as non-food items, or exchanging them for cash. 7 C.F.R. § 271.2. When an authorized store is found to have "trafficked" benefits by exchanging them for cash, the required penalty is permanent disqualification unless the USDA finds by "substantial evidence" that the store has "an effective policy and program . . . to prevent violations." 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1).

The USDA argues that summary judgment is appropriate because the Grocery has not shown a genuine dispute about whether its irregular EBT data and high benefit redemption rate reflect legitimate transactions. Def.'s Mot. Summ. J. 11. The Grocery contends that its evidence is sufficient to preclude summary judgment. Pl.'s Opp'n 1.

1.  Irregular EBT Data

Trafficking may be shown by irregular patterns in a store's EBT data, even if some irregularities can be explained by legitimate customer behaviors. See Idias v. United States, 359 F.3d 695, 698 (4th Cir. 2004). Here, the charge letter

documented several irregular patterns in the Grocery's EBT data, including: (1) the 383 transactions ending in .00, .25, and .50; (2) the 343 "excessively large" transactions of $39.00 to $599.98; (3) the 32 back-to-back transactions; and (4) the 154 same-day, multiple purchases from individual accounts. Admin Rec. 45-72.

The Grocery has presented evidence that over 100 SNAP-eligible items in its inventory end in .00, .25, or .50, and 15 SNAP-eligible items are priced at or above $10.00. *See* Pl.'s Opp'n, Ex. B. Thus, it is not unusual that some EBT transactions would end in .00, .25, and .50, or that some customers would spend more than $39.00 for SNAP goods. But, Lin's affidavit that "[b]ecause Rodriguez Grocery has no shopping carts, customers make multiple trips to the store [as] their items cannot be hand-carried in one trip" is inconsistent with the more than 125 transactions over $100.00 which took place between July and September 2009. Lin Aff. ¶ 23; Admin Rec. 143-45.

Further, the Grocery has not presented evidence to create a genuine dispute as to the other irregular EBT transactions. The Grocery contends that the back-to-back transactions do not reflect that benefits were exchanged for cash, but resulted because Lin and his wife "visually assess the items a customer is carrying and tally the total remotely and instantly, even as

9

the [previous] customer is bagging his groceries, swiping his card, and moving on." Pl.'s Opp'n 19. The Grocery has presented no evidence of this "remote[] and instant[]" tallying,[9] and its argument does not explain the six transactions valued between $50.00 and $199.87 that were rung up within one minute of a previous transaction. Admin. Rec. 154-57.

The Grocery also has presented no evidence that the multiple same-day individual account transactions were legitimate. Although some of these transactions may be explained by the Grocery's customers who "live within a block or two of the store" and may "shop [there] several times a day," Lin Aff. ¶ 22, this does not account for the multiple transactions separated by less than five minutes, Admin. Rec. 58. The Grocery's factually unsupported arguments do not create a genuine dispute about the legitimacy of the irregular EBT transactions.[10]

---

[9] In his affidavit, Lin does not describe this practice, but states that "[w]hen a customer purchases items, they hand them to either me or my wife, who rings them into the single point-of-sale device. Because my wife and I are very familiar with the pricing, we are able to total a customer's sales very quickly." Lin Aff. ¶ 17.

[10] See Hajifarah, 2011 WL 1575308, at *14-15 (transactions made "too rapidly to be credible" were not persuasively explained by plaintiff's "conjectural" argument that he or his wife would "calculate the total of transactions for customers in line and relay that amount to [the cashier]" when "not one . . . witness[] provided details that . . . helped corroborate [the plaintiff's] story").

2. Excessive Benefit Redemption

The USDA argues that Grocery's "unusually high average value of redemptions," as compared to Hispano American Grocery, shows that Grocery exchanged SNAP benefits for cash. Def.'s Reply 10. The Grocery argues that it is not comparable to Hispano American Grocery, "cast[ing] the [USDA's] entire data set into doubt." Pl.'s Opp'n 13-14.

A store's "relatively high food stamp redemption rate" may "be[] the result of unusually heavy patronage by food stamp recipients." *Carlson v. United States*, 879 F.2d 261, 264 (7th Cir. 1989). But absent another plausible explanation, a high redemption rate also indicates trafficking.[11]

Here, the USDA's evidence is that in 2009, the Hispano American Grocery, located .284 miles from the Grocery, redeemed $23,429.09 in SNAP benefits, while the Grocery redeemed $125,667.34. Admin. Rec. 155-56. Between July and September 2009, Hispano American Grocery made 989 EBT transactions at an average value of $7.67, while the Grocery made 1,632 transactions at an average value of $29.74. *See id.* 115.

The Grocery concedes that it redeemed $48,535 in benefits between July and September 2009, and $124,667.34 in benefits

---

[11] *See Bertrand v. United States*, 552 F. Supp. 878, 880 (D. Or. 1982)(high redemption rate explained by evidence showing an "influx of low-income people into [the stores'] areas"), *rev'd on other grounds*, 762 F.2d 518 (9th Cir. 1984).

11

between October 2008 and October 2009. Pl.'s Opp'n 15. But, the Grocery argues that its "gross sales in calendar year 2009 . . . w[ere] $827,704" and "[a] reasonable estimate of [its] 2009 food stamp eligible sales is therefore $728,380." Id. 15-16. Accordingly, the "approximate 2009 food stamp redemption rate was 17.3 percent of eligible sales (i.e. $125,667.34 divided by $728,380) compared to the 22.42 percent rate at Hispano American Grocery." Id. 16.

However, the Grocery has not produced evidence supporting this "approximate food stamp redemption rate," and its argument does not explain the disparities between the stores' average EBT transaction value or number of transactions. Further, the Grocery has not disputed Claypoole's store inventories, which show that the Grocery had a smaller food stamp eligible inventory than Hispano Americano Grocery. See Admin. Rec. 8, 77. The Grocery has not produced evidence from which a reasonable factfinder could conclude that its inventory supported the SNAP benefits redeemed. The excessive benefit redemption and irregular EBT data would support summary judgment for the USDA.[12]

---

[12] See McClain's Market v. United States, 214 Fed. Appx. 502, 505 (6th Cir. 2006)(summary judgment appropriate when store owner "offer[ed] only general justifications" for irregular data but "simply offered no evidence to explain the volume, frequency, or size of the transactions identified by the government"); Kahin v. United States, 101 F. Supp. 2d 1299, 1303

C. Rule 56 (d) Affidavit

The Grocery has filed a Rule 56 (d) affidavit for further discovery. Pl.'s Opp'n, Ex. A. It argues that discovery is needed because "critical information," including the identities of the individuals engaged in the suspect EBT transactions, is "within the exclusive possession of [the] Defendant." *Id.* ¶¶ 3-4. Because many of the USDA's arguments rely on assumptions about its customers' habits, the Grocery contends that it is unable to oppose the USDA without "allow[ing] these customers to speak for themselves." *Id.* ¶ 4. The Grocery also seeks the full data set of its July through September 2009 EBT transactions and a full data set of EBT transactions at the Hispano American Grocery. *Id.* ¶ 6.

Generally, "a district court must refuse summary judgment wh[en] the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Nader v. Blair*, 549 F.3d 953, (4th Cir. 2008) (internal quotation marks and citation omitted). In such a case, the nonmoving party must comply with Fed. R. Civ. P. 56 (d) and "set

---

(S.D. Cal. 2000)(granting summary judgment because the only logical explanation for the irregular patterns in EBT data and the volume of transactions compared to the store's inventory was that the store was trafficking; although store owner's explanation of his customer's buying habits may have negated some of the irregular data it was not sufficient to raise a material fact issue because most of the transactions were unexplained).

13

out the reasons for discovery in an affidavit." *Id.* "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56 [d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002).

"[S]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." *Harrods,* 302 F.3d at 246-47 (quotation marks omitted). Here, there has been no discovery. The data matching the Grocery's customers to the suspect EBT transactions is in the USDA's control, and—at a trial *de novo*—the testimony of those customers may be used to dispute the trafficking allegation. *See Idias,* 250 F.3d at 698. The Hispano American Grocery's EBT data—which forms the basis for the USDA's belief that the Grocery's redemption rate was excessive—is also within the USDA's exclusive control. Accordingly, the Grocery's request for discovery will be granted, and the USDA's motion for summary judgment will denied without prejudice.

III. Conclusion

For the reasons stated above, the USDA's motion for summary judgment will be denied.

_5/11/11_
Date

William D. Quarles, Jr.
United States District Judge

14